Kenneth E. Ronemus v. Commissioner.
Ronemus v. Commissioner
Docket No. 3203-67.
United States Tax Court
T.C. Memo 1969-161; 1969 Tax Ct. Memo LEXIS 135; 28 T.C.M. (CCH) 799; T.C.M. (RIA) 69161; August 6, 1969, Filed Robert E. Teaford and Domenic Federico, 100 E. Broad, Columbus, Ohio, for the petitioner. Rodney G. Haworth, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies in the income tax of petitioner and additions to the taxes have been determined by the Commissioner for the following taxable years and amounts: Year
Deficiency
Addition to taxSection 6653(a) [1]
1963
$7,935.23
$396.76
1964
548.75
27.44
*136 The issues to be decided are: (1) whether petitioner was a partner of King Paving and Construction Company during the taxable year 1963; (2) if so, did the partnership terminate during the taxable year 1963; (3) whether the respondent erred in increasing the King Paving and Construction Company's gross income by $4,461.28 and in disallowing claimed business expenses of $24,909.13; and (4) whether the petitioner is liable for the addition to the taxes for negligence provided for in section 6653(a). The deficiency determined by the Commissioner for the taxable year 1964 has been conceded by the petitioner. Findings of Fact Such facts as have been stipulated to by the parties are accordingly found as fact. Kenneth E. Ronemus (hereinafter referred to as petitioner) resided at Columbus, Ohio, at the time of filing his petition. Petitioner filed his income tax returns for the calendar years 1963 and 1964 with the district director of internal revenue at Cincinnati, Ohio. During April 1963, petitioner began working with Ben F. King (hereinafter referred to as King) of King *137 Paving and Construction Company (hereinafter sometimes referred to as the Company) which was already in existence and conducting business. Immediately prior to beginning work with the Company, petitioner had worked as a sales manager for Reliable Bearing Company and was paid $100 per week plus an equal share of the profits. At the time King and petitioner began working together, they understood that they were to be partners. They opened a bank account and signed the signature card as partners. They applied for insurance on certain company trucks, informing the insurance company representative that they were partners. King had operated the Company for approximately a year prior to that time and the company trucks had been registered in the company name. A number of legal actions were commenced against King and petitioner as partners, doing business as King Paving and Construction Company, relating to liability allegedly incurred during 1963. Petitioner has never entered into a partnership agreement with King, nor has he ever entered into any written agreement regarding his relationship with King. The original arrangement between King and petitioner provided that petitioner was to *138 receive $100 per week and share the profits equally. Within one month the arrangement was changed to provide that petitioner would receive $100 per week plus 5 percent of all gross receipts from sales made by petitioner and other salesmen. Petitioner did not agree to share the losses, if any, of the Company. Petitioner never received a share of the profits of the business, nor did he receive any commissions. He was paid a salary only. Petitioner left the Company in September 1963. Neither at that time nor at any time subsequent thereto was an accounting made between King and petitioner. King continued to operate the business after petitioner's departure 800 While he was working with the Company, petitioner managed the sales department. He had hired two salesmen. Petitioner's primary duties consisted of interviewing prospective customers. He reported the results of these interviews almost daily to King. Petitioner did not participate in the management of the Company in any area other than the sales department. The overall management of the Company was in the hands of King. On his 1963 Federal income tax return, petitioner reported the amount of $2,200 as wages or commissions *139 received from the Company. At the request of King, a partnership return, Form 1065, with respect to the Company for the taxable year 1963 was prepared by a certified public accountant. Petitioner was not consulted by the accountant concerning the preparation of the return. The return reported the following information: Gross receipts or gross sales
$62,834.90
Less: cost of goods sold 26,687.95
Gross profit
36,146.95
Less: deductions 31,103.55
Ordinary income 5,043.40 Schedule K. - Partners' Shares of Income, Credits, and Deductions OrdinaryIncome
(a) Ben F. King
$2,521.70
(b) Kenneth Ronemus 2,521.70
Total
5,043.40
As a result of his audit of the books and records of the Company for the taxable year 1963, the revenue agent adjusted both the gross receipts or gross sales and the deductible expenses reported on the partnership tax return. The adjustment to gross receipts or gross sales was the difference between the amount reported and the total of all funds deposited to the partnership account during the taxable year 1963, as determined by analyzing the bank deposits of the partnership. The adjustment to deductible expenses *140 was the difference between the amounts reported and the agent's adjusted total of expenses. The agent arrived at the total of expenses by allowing all expenses he could verify by examining cancelled checks and/or paid invoices and other records. No other expenses were allowed. All checks examined by the agent were signed by both King and petitioner. Ultimate Findings Petitioner and King did not in good faith and acting with a business purpose intend to join together in the present conduct of the business of the Company as a partnership at any time during the period of April 1963 through December 1963. During the above period, petitioner was an employee of the Company, being employed on a salary and profit-sharing or commission basis. Opinion Respondent determined that petitioner was a partner of the Company during the taxable year 1963 and, therefore, that petitioner was taxable under section 61(a)(13) of the Code on his distributive share of the alleged partnership net profits during said year, in addition to the amounts received by petitioner as compensation. Petitioner contends that he was not a partner in the Company, and that he is taxable only on the amounts of compensation *141 which he actually received during the taxable year 1963. The sole question to be decided in these proceedings is whether a partnership existed between petitioner and King during 1963 within the meaning of section 761(a). [2]
The general test to be applied in determining the existence of a partnership is the real intent of the parties, which in turn is to be determined from a consideration of all of the relevant facts and circumstances. , reversing (C.A. 5, 1948), reversing a Memorandum Opinion of this Court. Also, the question of whether, for income tax purposes, a partnership exists is to be decided under Federal rather than State law. , reversing *142 (C.A. 6, 1945), reversing . Applying the test enunciated in the Culbertson case to our Findings of Fact above, we are convinced that the parties did not intend to enter into a partnership as defined in section 761(a) of the Code. 801 At the time petitioner began working with King during April 1963, the Company was already in existence and was conducting business. The record does not show that petitioner acquired any ownership interest in the company assets which up to that time were registered in the name of King Paving and Construction Company. This factor, when considered collectively with the evidence that there was no accounting of the company assets made between petitioner and King when petitioner ceased working with the Company, make it evident that petitioner did not in fact acquire any ownership interest in the company assets. King controlled the overall management of the Company. Petitioner's duties were confined to the operation of the sales department. He reported the results thereof almost daily to King. Although the lack of participation in the overall management is not itself sufficient to negate the existence of a partnership, *143 we consider it particularly relevant in the present case because under our interpretation of the facts, petitioner appears to have been a sales manager rather than a partner. Although the record disclosed that petitioner and and King understood originally that they were to be partners and share profits, their subsequent action of amending petitioner's oral compensatory arrangement with the Company shows at least a failure to consummate part of that understanding, i.e., to share profits, into a binding agreement. Within one month after petitioner began working with King, the latter changed the original oral compensatory arrangement under which petitioner was to share profits equally with King, and provided instead that petitioner was to receive 5 percent of gross receipts plus $100 per week. Petitioner and King never executed a written agreement with respect to their business relationship, partnership or otherwise. It seems likely, therefore, that the original understanding between the parties that they were to be partners was abandoned at the same time the profit-sharing arrangement was changed. At the very least, it is safe to say that this understanding never developed into the *144 intent necessary to the formation of a valid partnership under the Culbertson test. Even if the original compensatory arrangement which provided that petitioner was to receive a share of the profits plus $100 per week had not been changed as above, this would not by itself be conclusive as to the existence of a valid partnership. Absent proof of a real intent to form a partnership, a profit-sharing arrangement will not be considered a partnership for tax purposes. See affd. (C.A. 5, 1952). This is especially true where, as here, the record shows that petitioner did not agree to share the losses, if any, of the Company. The oral arrangement between petitioner and King did not mention losses. , affd. (C.A. 6, 1952), certiorari denied . It is also significant to note that petitioner never received a share of the profits, nor did he ever receive commissions. Petitioner only received his $100 per week salary. It seems obvious to us that the parties intended that petitioner was a salaried employee, *145 not a partner. Respondent would have us rely upon the facts that petitioner and King signed a bank account signature card as partners, applied for insurance representing that they were partners, and that petitioner and King were sued as partners doing business as King Paving and Construction Company for liability allegedly incurred during 1963. Such evidence is not persuasive in light of the other facts shown above. The fact that a partnership return for the Company was prepared for the taxable year 1963 is not persuasive because the record shows that the return was prepared at the request of King, and that petitioner was not consulted by the accountant concerning the preparation of the return. Petitioner's failure to call King as a witness does not lead to the inference that, if called, King's testimony would have been unfavorable to petitioner. Because the record indicates that King's testimony was unavailable to either party, it would be inequitable for an unfavorable inference to be drawn against either party for their failure to call King as a witness. See (C.A. 8, 1962). In considering the evidence bearing on the *146 intention of the parties, we have not founded our conclusion upon any single factor, but have considered all of the relevant facts and circumstances. Specifically, our conclusion is based upon the following factors: (1) Petitioner acquired no ownership interest in the company assets. (2) Petitioner did 802 not participate in the overall management of the Company. (3) There was never a fixed agreement to share profits. (4) Nor was there any agreement to share losses or to be liable for the debts of the Company. (5) Petitioner never received any compensation other than his fixed $100 per week salary. These factors amply tend to rebut the presumption of correctness attaching to the Commissioner's determination that a valid partnership existed. Petitioner has therefore satisfied the burden of proof imposed under Tax Court Rule No. 32. [3]
Because of our conclusion, it is not necessary to discuss issue (2) since the latter was entirely dependent upon a finding that a partnership existed. Also, it is not necessary to discuss issue (3) because *147 absent a finding of a partnership, petitioner's tax liability is unaffected by respondent's adjustments to the taxable income of the Company. Regarding issue (4), i.e., whether petitioner is liable for the additions to the taxes provided for in section 6653(a), we find that the addition to the tax was properly imposed for the taxable year 1964. From our finding that no partnership existed for the taxable year 1963, it follows that no addition to the tax should be imposed on petitioner for the taxable year 1963. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. SEC. 761. TERMS DEFINED. (a) Partnership. - For purposes of this subtitle, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate. * * *↩
3. RULE 32. BURDEN OF PROOF The burden of proof shall be upon the petitioner * * *↩